**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

CORNELL DEON MITCHELL,

Defendant - Appellant.

No. 02-4120
(D.C. No. 2:01-CR-179-B)
(D. Utah)

---

**ORDER AND JUDGMENT** *

---

Before **MURPHY** , **McWILLIAMS** , and **HARTZ** , Circuit Judges.

Defendant Cornell Deon Mitchell appeals the district court's denial of his motion to suppress evidence, contending his Fourth Amendment rights were violated when a police officer frisked him and patted down his jacket without a reasonable basis to believe that he was armed and dangerous. We have jurisdiction under 28 U.S.C. § 1291 and reverse.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Factual Background

The facts in this case are not in dispute. On March 8, 2001, Officer Brede of the Salt Lake City Police Department was dispatched to investigate an alleged shoplifting at the Evolution Ski Company. Upon arriving at Evolution, Brede parked his car and approached two men who were waiting outside the store. One of the men, a store manager, told Brede that the other man (later identified as defendant) was attempting to return stolen ski pants. Officer Brede asked both men to return to the store, where he would continue the investigation.

While outside, defendant was holding a pair of ski pants in one hand and a jacket in the other. After returning to the store, defendant stood near a sales counter, placed his jacket at his feet, and set the allegedly stolen pants on the counter.

Before continuing his investigation, Officer Brede conducted a frisk of defendant's person, but found no weapons. Officer Brede then began to pick up defendant's jacket from the floor, at which time defendant informed the officer that there was a pistol in the jacket's pocket. Officer Brede proceeded to go through the jacket and found the pistol and five rounds of ammunition. Defendant was placed under arrest for illegal possession of a firearm. He was not, however, arrested for shoplifting.

Officer Brede testified that he frisked defendant because he was concerned for his safety. This fear stemmed from two factors: (1) the encounter with defendant was taking place in a high-crime area and (2) defendant was potentially involved in a shoplifting. Officer Brede testified that he knew the store was in a high-crime area based on his experience working in the area and his training at the police academy. Officer Brede had previously encountered people carrying weapons in that part of Salt Lake City.

Defendant's conduct prior to the frisk, however, did not suggest any danger to Officer Brede. Officer Brede described the events as follows:

Q. [Y]ou proceeded inside to the ski shop?

A. Correct.

Q. And you immediately conducted a Terry frisk on [defendant] at that time?

A. I did.

Q. Did [defendant] do anything at that time that was threatening toward you?

A. Make any actions toward me, no, he did not.

Q. Did he attempt to flee when you arrived?

A. No, he did not.

Q. Was there anything noticeable on his body that would indicate to you that he was carrying a weapon, any bulge in his pockets or anything like that that made you think he had a weapon on him?

A.  No, there was not.

Q.  Did he reach inside his shirt or his pants when you proceeded into the store?

A.  No.  He just had the pants and the jacket.

Q.  But he was cooperative, correct?

A.  He was cooperative.

Q.  He sat the jacket on the floor?

A.  He did.

Q.  So in order to get something out of the jacket he would have to have bent down to get it out, correct?

A.  That is correct.

ROA, Vol. II, at 14-15.  In later testimony Officer Brede added:

Q.  When you first encountered [defendant] did you have any reason to believe that he might actually be in possession of something that could harm you?

A.  Not him as an individual other than the fact that he is now a suspect in a crime and he is in this area where my dealings with people have sometimes included the carrying of weapons.

ROA, Vol. III, at 10.  Officer Brede also testified that defendant was polite, cooperative, and non-threatening.

After the arrest, federal authorities charged defendant with one count of possession of a firearm by a restricted person, in violation of 18 U.S.C. § 922(g). He filed a motion to suppress the pistol, claiming Officer Brede's frisk violated

his Fourth Amendment rights.  The suppression motion was denied by the district court.  Defendant then entered a conditional guilty plea, reserving his right to appeal the denial of the motion to suppress.  The district court imposed a sentence of 21 months' imprisonment, followed by 36 months of supervised release.

## II.  Discussion

"In reviewing the denial of a motion to suppress, this court considers the totality of the circumstances and views the evidence in the light most favorable to the government."  *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001).  "We accept the district court's findings of facts unless clearly erroneous."  *Id.* But "[t]he ultimate determination of reasonableness under the Fourth Amendment is a question of law we review de novo . . . ."  *Id.* at 1226 (internal quotation marks omitted).

Of course, when an officer has probable cause to arrest a suspect, the officer may search the person of the arrestee.  *See United States v. Robinson*, 414 U.S. 218, 224-25 (1973).  But when the officer possesses only reasonable suspicion to detain a person, the officer may constitutionally conduct a warrantless pat-down search of the person only "where he has reason to believe that he is dealing with an armed and dangerous individual."  *Terry v. Ohio*, 392 U.S. 1, 27 (1968).  Defendant asserts that the government can point to no

evidence of such a basis to justify Officer Brede's frisk of his person and his coat. We agree.

The government concedes that the district court made no finding that Officer Brede had reason to believe that defendant was armed and dangerous. It requests that we remand the case to the district court to enable the court to make findings on the matter. We deny this request. The district court held two evidentiary hearings and entertained briefing on the issue. As counsel for the government conceded at oral argument, the government has already presented all its evidence regarding defendant's dangerousness to the district court. Because that evidence cannot sustain the required dangerousness finding, remand would serve no purpose.

The government relied on the following facts: (1) defendant was present in a high crime area; (2) defendant was a shoplifting suspect; and (3) defendant had a jacket in his possession, which he dropped into a clump on the floor, still within arm's reach. But even viewing these facts in the light most favorable to the government, they could not give Officer Brede "reason to believe that he [was] dealing with an armed and dangerous individual." *Id.* Defendant took no action that caused the officer to fear for his safety. He was cooperative, polite, and non-threatening. Nor did any of defendant's clothing contain bulges suggestive of weapons. To uphold the constitutionality of a frisk on these facts would be to

permit a frisk whenever a person present in a high-crime area is accused of involvement in a non-violent petty crime. The prospect is as mind-boggling as it is unconstitutional.

The government alternatively contends that we should uphold the frisk as incident to an arrest. It argues that since Officer Brede had probable cause to arrest defendant for shoplifting, he was able to search him incident to that arrest. *See Robinson*, 414 U.S. at 224-25. The government asserts that it is irrelevant that defendant was never actually arrested for shoplifting, so long as there was probable cause to arrest. The shortest answer to that contention is that there was no probable cause.

"An officer has probable cause to arrest if, under the totality of the circumstances, he learned of facts and circumstances through reasonably trustworthy information that would lead a reasonable person to believe that an offense has been or is being committed by the person arrested." *United States v. Morris*, 247 F.3d 1080, 1088 (10th Cir. 2001) (internal quotation marks omitted). "Probable cause does not require facts sufficient for a finding of guilt; however, it does require more than mere suspicion." *Id.* (internal quotation marks omitted).

The only facts supporting a determination of probable cause here are (1) the store manager's accusation that defendant had tried to return ski pants that had been stolen and (2) defendant's possession of ski pants. To be sure, we presume

that a citizen informant is reliable.  *See Easton v. Boulder*, 776 F.2d 1441, 1449-50 (10th Cir. 1985).  But the source of the accusation must still set forth facts supporting the accusation.  *See Illinois v. Gates*, 462 U.S. 213, 239-40 (1983) (conclusory allegation without any factual support cannot establish probable cause).  Here, the store manager had not provided any factual support for his allegation that the pants had been stolen, perhaps because the frisk was conducted before the officer interviewed the manager.

Because defendant's motion to suppress the pistol should have been granted, we **REVERSE** the order denying the motion and **REMAND** to the district court with instructions to **VACATE** defendant's conviction and sentence.

ENTERED FOR THE COURT

Harris L Hartz
Circuit Judge

*United States v. Mitchell*, No. 02-4120.

**McWilliams, J.**, Senior Circuit Judge, Dissenting.

In reviewing the denial by a district court of a defendant's motion to suppress, we consider the totality of the facts and circumstances in the light most favorable to the government. *United States v. Gay*, 240 F.2d 1222, 1225 (10th Cir. 2001). The facts and circumstances in the instant case are not in dispute. Such being the case, our task on appeal is to determine, *de novo*, whether based on the undisputed facts, Officer Brede's conduct in the instant case was "reasonable" as required by the Fourth Amendment. I am of the firm view that Officer Brede's conduct was reasonable and did not violate the Fourth Amendment. (It appears to me that the majority has reviewed the facts and circumstances in the instant case in the light most favorable to Mitchell.)

At the hearing on the motion to suppress, Officer Brede, who was the only witness, testified that he "frisked" Mitchell because he "wanted to ensure that he did not have any weapons on him," and that his concern was based in part on his personal experience with the area. Officer Brede testified that his encounter with Mitchell was in an area of town frequented by prostitutes, drug dealers and drug users where persons often carried weapons. In this regard, the district court held that Officer Brede was "reasonably concerned for his safety and therefore, began a pat-down search of defendant." I would also emphasize that Officer Brede's encounter with Mitchell was definitely "confrontational," in the sense that

Mitchell had the stolen property in his hands!  The fact that a handgun and five rounds of ammunition were located in Mitchell's jacket does not validate the search, but does, perhaps, illustrate Officer Brede's concern for his personal safety.  (The handgun was the basis for the charge that Mitchell, who had prior felony convictions,  unlawfully possessed a firearm in violation of 18 U.S.C. § 922(g).)  I do not agree with the suggestion that Officer Brede's conduct "is as mind-boggling as it is unconstitutional."  In my view, Officer Brede's conduct was neither "mind-boggling" nor "unconstitutional."

I believe the district court's denial of Mitchell's motion to suppress is consistent with  *Terry v. Ohio,*  392 U.S. 1 (1968).  In  *Terry*, where the Supreme Court found the "frisk" to be reasonable [1], the Court spoke as follows:

> Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties.  American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded.  Virtually all of these deaths and a substantial portion of the injuries are inflicted with guns and knives.
> . . . .
> Our evaluation of the proper balance that has to be struck in this type of case leads us to conclude that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the

---

[1] In *Terry,* the "frisk" occurred in an area of Cleveland known for pick-pockets and shoplifters, and the officer had observed what he thought was "suspicious behavior" by the person searched.

police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others is in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

*Id.* at 23, 27. (Citations omitted).

Accordingly, I would affirm.